Joslyn v. The State.

No. 16,040.

JOSLYN v. THE STATE.

CRIMINAL LAW.— *Larceny.*— *Information.* — *Duplicity.* —An information charging in one count the larceny of two distinct articles of personal property belonging to different persons, without alleging that the property of the two owners was stolen at the same time and by the same act, is bad for duplicity.

From the Allen Circuit Court.

*S. M. Hench,* for appellant.

*A. G. Smith,* Attorney General, and *J. M. Robinson,* Prosecuting Attorney, for the State.

ELLIOTT, J.—The information charges, in one count, that "the appellant feloniously did steal, take and carry away one cutter bar of the value of ten dollars, and two hundred pounds of iron of the value of five cents per pound, of the personal property of James Gunnison, and one cutter bar of the value of ten dollars, and two hundred pounds of iron of the value of five cents per pound, the personal property of James Parham."

If the count of the information from which we have quoted is double, it is bad for duplicity. The rule is well settled that duplicity is fatal upon a motion to quash. *Siebert* v. *State,* 95 Ind. 471 (475); *Stewart* v. *State,* 111 Ind. 554 (556); *Fahnestock* v. *State,* 102 Ind. 156 ; *State* v. *Weil,* 89 Ind. 286 ; *Knopf* v. *State,* 84 Ind. 316.

Whether the pleading is double or not depends upon whether stealing the property of two different persons is *prima facie* one offence, or is two distinct offences. We do not here controvert the doctrine that there may be cases where the larceny of the property belonging to different persons may constitute a single offence, as, for instance, where it is all in one bundle or in one package, for it is unnecessary to do so, inasmuch as in such a case there is a single and indivisible act, and it may be a single crime. *State* v.

*Nelson*, 29 Mc. 329 ; 1 Hale P. C. 531; *Clem* v. *State*, 42 Ind. 420 ; *Ben* v. *State*, 22 Ala. 9. If the information alleged that the property of the two owners was stolen at the same time and by the same act, so that it could be affirmed that there was a single larceny, we should perhaps be able to sustain the information. But the difficulty that arises can not be solved by assuming that there was a single act, unless, as a matter of law, it can be adjudged that the larceny of property belonging to different owners, committed on the same day, constitutes a single crime, for there are no facts alleged tending to show that there was one indivisible offence. As there is only a single count, we are required to decide whether the larceny of property belonging to two different persons can, as matter of law, be considered to constitute one offence, for no more than one offence can be properly charged in one count of an indictment or information, although different offences may be charged in different counts.

It is well known that every larcenous taking is a trespass against the owner. An essential element of the crime of larceny is trespass, although the trespass may be constructive and not actual. Assuming, as we must, that the element of trespass is essential to the crime of larceny, we must ascertain what the implication is where it is charged that there was a trespass against two or more persons. It seems clear to us that the implication is that the trespasses were separate and distinct. If Gunnison had sued the appellant for the trespass, and had alleged that the appellant carried away his, Gunnison's, property and that of Parham also, we suppose it to be plain that Gunnison could not recover the value of Parham's property, for the implication would be that there were distinct causes of action. If this is the implication, then the information is double. We can perceive no escape from this conclusion. We can not infer, for the sake of upholding a conviction of a crime, that what would

ordinarily be regarded as two distinct trespasses, is, in fact, only one. The authorities require the conclusion we have suggested. In the case of *Phillips* v. *State*, 85 Tenn. 551, the goods belonged to different persons, but were taken on the same night from the same room, and it was held that there were two distinct offences. In speaking of the trespass to the different owners it was said: "The wrong to one of them was no wrong to the other; and if the wrong to each was not a complete crime within itself, there is no wrong at all, because two acts involving the distinct rights and property of different individuals can not be coupled in order to constitute one offence against the law." Possibly the language used is a little too broad; but restricting it to due bounds, nevertheless, the principle declared decides the case against the State. Suppose, for the sake of illustration, that the appellant had been convicted of stealing Gunnison's property, and was subsequently indicted for stealing Parham's property, would the conviction be *prima facie* a bar to the second prosecution? To our minds it is clear that it would not be, although it is possible that if it appeared that the property of both owners was stolen in a single and indivisible act, the first conviction would bar further prosecution. If the first prosecution would not be a bar, and we think it would not be, it must be for the reason that *prima facie* there are two offences.

Resuming our consideration of the authorities, we quote from the case of *Morton* v. *State*, 1 Lea (Tenn.), 498, the following: "Every larceny includes a trespass to the person or property of the owner of the thing stolen. A larceny of the property of O'Brien was no trespass to the person or property of Corbitt, and *vice versa*." In the case of *State* v. *Thurston*, 2 McMullan (S. C.), 382, it was held that taking cotton belonging to three persons constituted three distinct offences. The doctrine is carried much further—possibly too far—in *Commonwealth* v. *Andrews*, 2 Mass. 409, for it was there held that the offences were distinct, although there was a single

Joslyn v. The State.

act. But well-reasoned cases in California go to the same length. *People* v. *Alibez*, 49 Cal. 452 ; *People* v. *Wasson*, 65 Cal. 138 ; *People* v. *Yoakum*, 53 Cal. 566. The common law rule as stated in *Nelson* v. *State*, 8 N. H. 163, is this : " If one steal at the same time the goods of A. and also other goods of B., there are two distinct larcenies. 8 East Crown Law, 521." Some of the cases say that the rule is that " the plea of *autre fois acquit* or *convict* is sufficient, whenever the proof shows the second case to be the same transaction with the first." *Copenhaven* v. *State*, 14 Ga. 8 ; *Holt* v. *State*, 38 Ga. 187. Without going into an examination of the decisions of other courts in detail, we cite, as sustaining the doctrine that unless the transaction is indivisible and the same the offences are distinct, *Vaughan* v. *Commonwealth*, 2 Va. Cases, 273 ; *Teat* v. *State*, 53 Miss. 439 ; *Burns* v. *People*, 1 Parker Crim. C. 182 ; *People* v. *Saunders*, 4 Parker Crim. C. 196 ; *Regina* v. *Morris*, 10 Cox C. C. 480.

It is difficult to reconcile the doctrine of our later cases with that asserted in *Clem* v. *State, supra,* but it is not important that we should attempt to do so in this instance, nor is it necessary to determine which is the better doctrine, for, assuming that the doctrine of *Clem* v. *State, supra,* is sound, it in no wise impeaches our conclusion ; for it is there held that the crime must be the product of one and the same act, and, conceding this, the information before us is bad.

In the case of *State* v. *Elder*, 65 Ind. 282, it was said : " When the same facts constitute two or more offences, wherein the lesser offence is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution to a final judgment will not be a bar to the second, although the offences were both committed at the same time and by the same act." Much to the same effect is the reasoning in *State* v. *Hattabough*, 66 Ind. 223, and *Siebert* v. *State, supra.* See, also, *Davidson* v. *State*, 99 Ind. 366.

We know that there are decisions hostile to the conclusion we here assert, but we are satisfied that our conclusion is right on principle, and sustained by the decided weight of authority.

It may not be amiss to say that we intimate no opinion as to what the rule should be upon a motion in arrest, for here the attack was made upon the information promptly, and the State had ample time and opportunity to cure the error.

Judgment reversed.

